**UNTIED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ALTe, L.L.C.,

Plaintiff,

v. CASE NO. 11-15077

QUEST CAPITAL INVESTMENTS, INC., d/b/a Quest Capital Finance Corporation, d/b/a Quest Capital Finance Inc., and COMMERCIAL ESCROW SERVICES, INC., HON. MARIANNE O. BATTANI

Defendants.
_________________________________/

**OPINION AND ORDER GRANTING DEFENDANT COMMERCIAL ESCROW SERVICES' MOTION TO DISMISS**

This matter is before the Court on Defendant Commercial Escrow Services' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue. (Doc. 17). The Court heard oral argument on April 4, 2012, and at the conclusion of the hearing took the motion under advisement. For the reasons that follow, the Court **GRANTS** the motion on personal jurisdiction grounds.

## I. STATEMENT OF FACTS

In May 2011, Plaintiff ALTe, L.L.C., secured a Letter of Intent ("LOI") from Defendant Quest Capital Finance Corporation ("Quest") setting forth the terms and conditions under which Quest would loan Plaintiff $19,000,000 (the "Loan") for a powertrain technologies program. (Doc. 11 Ex. 1). The LOI provided that Plaintiff make a $760,000.00 deposit (the "Deposit") to secure the Loan. (Id. at p.1). Quest selected Defendant Commercial Escrow Services, Inc. ("Commercial Escrow") to serve as the

escrow agent and hold Plaintiff's Deposit until Quest fulfilled all obligations under the proposed transaction. Commercial Escrow is a California corporation having its principal place of business in Pleasant Hill, California and has no physical presence or property in Michigan, nor does it advertise, solicit, or regularly conduct business in Michigan. (Doc. 17 Ex. 2). Plaintiff, Quest, and Commercial Escrow formalized the escrow arrangement by executing an Escrow Agreement that Quest drafted. (Doc. 17 Ex. 3). Quest and Commercial Escrow signed the agreement in California whereas Plaintiff signed in Michigan. (Doc. 17 Ex. 5).

On June 29, 2011, Plaintiff wire-transferred the Deposit to Commercial Escrow. (Doc. 24 Ex. 2). Commercial Escrow sent a fax to Plaintiff confirming that it had received the Deposit. (Doc. 24 Ex. 4). Pursuant to the Escrow Agreement, Commercial Escrow would hold the Deposit until Quest confirmed in writing to Plaintiff and Commercial Escrow that the Loan was approved and not subject to any contingencies. (Doc. 17 Ex. 3 at ¶ 1). The Escrow Agreement further provided that Quest would issue written confirmation in the form of a "Commitment Letter" that the requirements have been satisfied. Id. Then "[a] signed copy of the Commitment Letter by both [Plaintiff] and [Quest] will be provided by fax or e-mail to [Commercial Escrow]." Id. Upon Commercial Escrow's receipt of the signed Commitment Letter, it would release the deposit to Quest.

On July 11, 2011, Quest issued a Commitment Letter signed by Quest and Plaintiff. (Doc. 17 Ex. 4). The next day, Quest notified Commercial Escrow by email that the Loan was approved, not subject to any contingencies, and authorized

Commercial Escrow to release the Deposit. (Doc. 11 Ex. 4). Upon receipt of this letter, Commercial Escrow released the Deposit to Quest.

On October 12, 2011, Plaintiff demanded that Commercial Escrow return its Deposit. Plaintiff alleges that (1) the Loan was nowhere near ready to close; (2) Quest had multiple outstanding obligations to Plaintiff; and (3) the Commitment Letter did not authorize Commercial Escrow to release the Deposit because it did not confirm that certain disbursement criteria were satisfied. Commercial Escrow refused to return the Deposit to Plaintiff.

Plaintiff filed a four-count Complaint against Defendants in the Eastern District of Michigan to collect the Deposit. (Doc. 1). Plaintiff subsequently filed a First Amended Complaint in response to the Court's sua sponte Order to Show Cause why the case should not be dismissed for lack of subject matter jurisdiction. (Doc. 11). Commercial Escrow filed a motion to dismiss for lack of personal jurisdiction and improper venue. (Doc. 17). This motion is now before the Court.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(2)

Before an answer is filed, a defendant may move to dismiss for lack of personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). "Where personal jurisdiction is challenged in a 12(b) motion, the plaintiff has the burden of establishing that jurisdiction exists." Am. Greetings Corp. v. Cohn, 839 F. 2d 1164, 1168 (6th Cir. 1988). A motion to dismiss for lack of personal jurisdiction leaves the Court with three options: "it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual

questions." Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991) (citation omitted). The district court has considerable discretion in this decision and will be reversed only for abuse of discretion. Id. The method the court selects will affect the magnitude of the burden on the plaintiff to avoid dismissal. Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989).

Where the court relies solely on the parties' affidavits to reach its decision on the motion, the burden rests on the plaintiff to establish only a prima facie showing of jurisdiction in order to avoid dismissal and the court must consider the pleadings and affidavits in the light most favorable to the plaintiff. CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996). Further, the court does not weight the controverting assertions of the moving party due to its interest in "prevent[ing] non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." Id. (internal quotation marks and citation omitted).

## III. ANALYSIS

The parties dispute whether the Court may exercise limited personal jurisdiction over Commercial Escrow. The personal jurisdiction analysis requires a two-step inquiry. Air Products and Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 550 (6th Cir. 2007); see also Green v. Wilson, 565 N.W.2d 813, 815 (Mich. 1997). First, "the court must determine whether any of Michigan's relevant long-arm statutes authorize the exercise of jurisdiction over Defendants; and, if so, [second] the court must determine whether exercise of that jurisdiction comports with constitutional due process." Air Products, 503 F.3d at 550.

**A. Michigan's Long-Arm Statute**

Plaintiff argues Michigan's long-arm statute authorizes limited personal jurisdiction over Commercial Escrow because it has transacted business within Michigan and has engaged in tortious conduct that has caused consequences in Michigan. Michigan's long-arm statute for corporations provides that a court may exercise personal jurisdiction over a corporation if it has one of the following "relationships" with the state:

> (1) The transaction of any business within the state.
>
> (2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort. . . .

MICH. COMP. LAWS § 600.715.

In construing M.C.L. § 600.715(1), the Michigan Supreme Court stated that "[t]he word 'any' means just what it says. It includes 'each' and 'every' . . . . It comprehends the 'slightest'." Lanier v. Am. Board of Endodontics, 843 F.2d 901, 905-06 (6th Cir. 1988) (quoting Sifers v. Horen, 188 N.W.2d 623, 624 n.2 (Mich. 1971). In other words, the phrase "'[t]ransaction of any business' is very broad, and is established by 'the slightest act of business in Michigan.'" Hige v. Turbonetics Holdings, Inc., 662 F. Supp. 2d 821, 828 (E.D. Mich. 2009) (quoting Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 888 (6th Cir. 2002)).

To come within the plain language of M.C.L. § 600.715(2), a defendant's tortious conduct or the injury caused by that conduct must occur in Michigan. Bagsby v. Gehres, 195 F.Supp.2d 957, 963 (E.D. Mich. 2002) (citing Green, 565 N.W.2d at 817). Relatedly, the phrase "resulting in an action for tort" contemplates that "the action in tort"

be a viable, colorable claim - otherwise pleading even a frivolous tort claim, subject to dismissal, would confer limited personal jurisdiction.

After reviewing the pleadings, the Court finds Plaintiff cannot fulfill the requirements of M.C.L. § 600.715(2) because it has no viable tort claim against Commercial Escrow under Michigan law. Count IV alleges that Commercial Escrow breached certain fiduciary duties owed to Plaintiff when it negligently released the Deposit to Quest. (Doc. 11 at ¶¶ 53-58). Similarly, in Count III, Plaintiff asserts that Commercial Escrow breached the same duties under the Escrow Agreement. (Id. at ¶¶ 49-52). Plaintiff is clearly asserting a tort claim arising from Commercial Escrow's alleged breach of the Escrow Agreement. Under circumstances presented, Michigan's economic loss doctrine bars Plaintiff's tort claim.

The economic loss doctrine precludes an action in tort based on the same duty as would give rise to an action for breach of contract. Rinaldo's Const. Corp. v. Mich. Bell Tel. Co., 559 N.W.2d 647, 657-658 (Mich. 1997). In order for an action in tort to arise out of a breach of contract, the alleged wrongful act must constitute "(1) a breach of duty separate and distinct from the breach of contract and (2) active negligence or misfeasance." Spengler v. ADT Sec. Serv., 505 F.3d 456, 457-58 (6th Cir. 2007); see also Hart v. Ludwig, 79 N.W.2d 895, 897 (Mich. 1956) ("As a general rule, there must be some active negligence or misfeasance to support tort. There must be some breach of duty distinct from breach of contract."). Consequently, "the threshold inquiry is whether the plaintiff alleges violation of a legal duty separate and distinct from the contractual obligation." Rinaldo, 559 N.W.2d at 658.

Here, Plaintiff has failed to establish that Commercial Escrow owed and violated a legal duty separate and distinct from its obligations under the Escrow Agreement. In response to Commercial Escrow's position on this point, Plaintiff cites decisional law that pre-dates Rinaldo and its progeny and mistakenly insists it can simultaneously assert a tort claim that is a mirror image of its breach of contract claim. Plaintiff does not discuss the effects of the economic loss doctrine nor does it attempt to identify a tort duty owed that is separate and distinct from the duties under the Escrow Agreement. Moreover, the two unpublished opinions Plaintiff offers in support, Mt. Tai Asset Mgmt. Corp. v. Metro Equity Group, L.L.C., 09-10685, 2011 WL 65863 (E.D. Mich. Jan. 10, 2011) and Naimou v. Philip F. Greco Title Co., 264503, 2006 WL 397940 (Mich. Ct. App. Feb. 21, 2006), are easily distinguishable because neither case involved a plaintiff asserting a breach of fiduciary/gross negligence claim in the presence of an express escrow agreement covering the same duties. Accordingly, the Court may not exercise limited personal jurisdiction over Commercial Escrow under M.C.L. § 600.715(2) because there is no colorable action for tort under the allegations set forth in the pleadings.

The Court finds, however, that an exercise of limited personal jurisdiction over Commercial Escrow is proper under M.C.L. § 600.715(1) because it has engaged in the "transaction of any business" in Michigan. Commercial Escrow contracted with Plaintiff to perform escrow services in connection with a Michigan loan transaction and had contact with Plaintiff in Michigan regarding the same. This business relationship falls within the expansive interpretation of the phrase "transaction of any business within the state." See Salom Enterprises, L.L.C. v. TS Trim Indus., Inc., 464 F. Supp. 2d 676, 683

(E.D. Mich. 2006) ("[T]he Michigan statute allows 'any' business dealings to suffice, and 'any' includes even the slightest amount."). The Court may therefore exercise limited personal jurisdiction over Commercial Escrow pursuant to M.C.L. § 600.715(1).

**B. Due Process**

Although Michigan's long-arm statute authorizes limited personal jurisdiction over Commercial Escrow, the Court cannot exercise personal jurisdiction in violation of its constitutional right to due process. Neogen, 282 F.3d at 889. To show that the exercise of personal jurisdiction comports with due process, Plaintiff must "establish with reasonable particularity sufficient 'minimum contacts' with Michigan so that the exercise of jurisdiction over Defendants would not offend 'traditional notions of fair play and substantial justice.'" Id. (quoting Int'l Shoe v. Washington, 326 U.S. 310, 316 (1945)). To meet this burden in the Sixth Circuit, Plaintiff must satisfy a three-part test:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Id. (quoting S. Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968)). Each element "represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked." Lak, Inc. v. Deer Creek Enter., 885 F.2d 1293, 1303 (6th Cir. 1989).

Starting with the first part of the test, "purposeful availment" is considered the "constitutional touchstone" of limited personal jurisdiction, existing when a defendant's contacts with a forum state "proximately result from action by the defendant himself that create a substantial connection with the forum state, and where the defendant's conduct

and connection with the forum state are such that he should reasonably anticipate being haled into court there." Neogen, 282 F.3d at 889 (internal citations and alteration omitted); see also Intera Corp. v. Henderson, 428 F.3d 605, 616 (6th Cir. 2005) (describing purposeful availment as "essential" to a finding of limited personal jurisdiction). The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely the result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." Neogen, 282 F.3d at 889 (internal quotation marks and citation omitted).

In regards to interstate contractual obligations, such as is the case here, "the Supreme Court has emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions for the consequences of their activities.'" Air Products & Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 551 (6th Cir. 2007) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985)). However, "the mere fact that a non-resident defendant enters into a contract with a forum resident is not, by itself, a sufficient basis for finding purposeful availment." King v. Ridenour, 749 F. Supp. 2d 648, 656 (E.D. Mich. 2010) (citing Burger King, 471 U.S. at 478; Kerry Steel, Inc. v. Paragon Indus. Inc., 106 F.3d 147, 151 (6th Cir. 1997)). Instead, a court must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" in determining whether the non-resident defendant purposefully established minimum contacts within the forum. Burger King, 471 U.S. at 478-79. Ultimately, "it is the quality of the contacts, not the quantity, that determines whether they constitute purposeful availment." Gen. Motors Co. v.

Dinatale, 705 F. Supp. 2d 740, 748 (E.D. Mich. 2010) (citing Neal v. Janssen, 270 F.3d 328, 332 (6th Cir. 2001)).

After reviewing the record in a light most favorable to Plaintiff, the Court finds that Commercial Escrow did not purposely avail itself of acting in Michigan. Commercial Escrow had three discrete contacts with Michigan: (1) the Escrow Agreement with Plaintiff and Quest; (2) a receipt confirming the wire transfer of the Deposit from Plaintiff's New York bank account to Commercial Escrow account in California; and (3) a fax that Commercial Escrow sent to Plaintiff in Michigan confirming the receipt of the Deposit. These contacts are insufficient to establish purposeful availment.

Commercial Escrow did not intentionally reach into Michigan to do business with Plaintiff; Quest unilaterally selected Commercial Escrow to serve as the escrow agent. No agent or representative of Commercial Escrow ever visited Michigan to negotiate terms of the Escrow Agreement or solicit business from Plaintiff. Quest drafted the agreement and directly contacted Plaintiff for its execution, not Commercial Escrow. In other words, the actions of a third-party thrust Commercial Escrow into the forum. The purposeful availment requirement protects non-resident defendants from being haled into a foreign jurisdiction under these circumstances. See Neogen, 282 F.3d at 889. Personal jurisdiction is proper only "'where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State.'" Air Products, 503 F.3d at 551 (emphasis in original) (quoting Burger King, 471 U.S. at 475).

Further, the terms of Escrow Agreement show a temporary, attenuated connection to Michigan. Commercial Escrow was to receive the Deposit from a New York bank account; hold the Deposit in California bank account for no more than ten

days; and transfer the Deposit to Quest in California if certain conditions were satisfied or return it to Plaintiff's New York account if the conditions were not satisfied. Other than this ten-day escrow arrangement, nothing in the record suggests Commercial Escrow had any other past, present or future relationship with Plaintiff. The Escrow Agreement was simply an isolated transaction to facilitate the Loan from Quest to Plaintiff. The only direct communication between Commercial Escrow and Plaintiff was the fax confirming receipt of the Deposit. Simple correspondences to a forum that facilitate formation and performance of a contract are not enough to establish purposeful availment. King v. Ridenour, 749 F. Supp. 2d 648, 656 (E.D. Mich. 2010). Interestingly, Plaintiff's claim does not even arise from this contact with the forum; the basis of this lawsuit is the release of the deposit by Commercial Escrow to Quest, which occurred in California, not Michigan. Accordingly, the Court finds that Commercial Escrow has not purposefully availed itself of acting within Michigan.

The absence of purposeful availment is fatal to the Court's exercise of limited personal jurisdiction over Commercial Escrow. The Court therefore declines to address the remaining elements of the three-part due process test, since even if they were satisfied, the Court would still lack personal jurisdiction over Commercial Escrow. See Lak, 885 F.2d at 1303. Relatedly, the Court need not consider the parties' venue arguments as Plaintiff's claims against Commercial Escrow are dismissed without prejudice for want of personal jurisdiction.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Commercial Escrow's motion to dismiss on personal jurisdiction grounds.

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATED: May 23, 2012

CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon all parties of record via the Court's ECF Filing System.

s/Bernadette M. Thebolt
Case Manager